## Dietrich, Appellant, *v.* Dietrich.

*Divorce—Divorce a mensa et thoro—Cruel and barbarous treatment—Alimony.*

A decree of divorce, a mensa et thoro, on the ground of cruel and barbarous treatment, should be awarded, where the evidence established that the respondent, a few weeks after marriage, began a course of abuse which continued until the day he told the libellant to leave the house. Evidence was also produced to show that the libellant lived under frequent fear of personal violence by reason of threats and intimidations; that her husband constantly used abusive language and profanity toward her; accused her of contracting a venereal disease and persisted in a course of conduct which any woman of refinement would naturally resent. In the light of such testimony, it was reversible error for the court to refuse to grant a divorce, a mensa et thoro.

Argued April 21, 1921. Appeal, No. 107, April T., 1921, by libellant, from decree of C. P. Fayette County, March T., 1919, No. 1, refusing a divorce in the case of Mary Elizabeth Dietrich v. Frank Dietrich. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Libel in divorce, a mensa et thoro, on the grounds of cruel and barbarous treatment. Before VAN SWEARINGEN, P. J.

The facts are stated in the opinion of the Superior Court.

The case was referred to A. C. Hagan, Esq., as master, who recommended that a divorce be refused.

On exceptions to the master's report, the court dismissed the exceptions, and refused a divorce. Libellant appealed.

*Error assigned* was the decree of the court.

*S. J. Morrow,* of *Sturgis, Morrow & Sturgis,* for appellant.

*Nicholas W. Rosenberg,* for appellee.

OPINION BY TREXLER, J., July 14, 1921:

The libellant alleges that the respondent by cruel and barbarous treatment endangered her life and offered indignities to her person which rendered her condition intolerable and life burdensome. She seeks a divorce from bed and board with alimony. A bill of particulars was filed. Respondent denies the allegations and in addition charges that the libellant was extremely intimate with him before marriage and that after marriage he contracted a venereal disease from her.

Before considering the proof submitted by the libellant we think we should comment upon these assertions made by the respondent. We fail to see what bearing the charge of intimacy before marriage has upon the question before the court. The respondent in vulgar detail testified in regard to it and on cross-examination the libellant was compelled repeatedly to deny that any intimacy existed. As to the charge of the libellant having communicated a venereal disease to the respondent, no proof was offered except the unsupported testimony of the respondent. No doctor was called to verify the statement and the respondent admitted that he had never even mentioned the subject to his wife. There was some inference sought to be drawn from the presence of a syringe and a bottle found in a drawer. There was no proof that appliances of this kind indicated the presence of such a disease. The only apparent purpose for the introduction of these subjects seems to have been to humiliate and embarrass his wife, to subject her to the contempt of her friends and the ridicule of the unthinking. The narrative of the respondent was coarse and vulgar and lack of respect to the standards of ordinary morality frankly avowed. In some jurisdictions charges in the pleadings of adultery in communicating venereal diseases when unsupported are sufficient grounds for bringing a cross-action for divorce, being held that they

constituted cruel treatment and indignities: Wilson v. Wilson, 134 S. W. 963 (Ark.); Rogers v. Rogers, 17 S. W. 573. In other states such charges when made in the pleadings, thus becoming a matter of public record by their formal nature, are held to aggravate the cruelty: 19 C. J. 52. It is sufficient for us to say that the recklessness with which these charges were made, the lack of restraint which defendant showed in his reference to the alleged misconduct in which he claims to have been a party and the entire want of decency in his story, lead us to give but scant credit to his narrative.

The wife testified that a few weeks after their marriage he began a course of abuse which continued until the day he told her to get out of the house. It will do no good to repeat the various epithets which he applied to her nor to review the testimony in detail. She was under frequent fear of personal violence by reason of threats and intimidations. She was repeatedly ordered out of the house. Profanity was a constant occurrence on his part. He would jump at her, run at her with clenched fists as if to strike her accompanied by a threat to knock her down and smash her teeth down her throat. She testified that she required medical attendance on several occasions and that she suffered from the effects of his abuse to such an extent that his approach would cause her to tremble. He was a man of large size, weighing two hundred and twenty-five pounds, and such a course of conduct persisted in against a woman of any refinement would naturally produce the effects which she claimed it did upon her. The same brutality which he exhibited in his testimony seems to have characterized his course of conduct throughout their married life. We think the libellant is entitled to her divorce. That the indignities offered to her were such a course of illtreatment and outrage as rendered her condition intolerable and life burdensome.

The order of the court is reversed and the record is remanded with instructions that a divorce from bed and

board be granted with the allowance of such alimony as may be appropriate.   Appellee for costs.